We'll hear argument in the next case, Ritigliano v. United States Department of Justice. And we'll hear first from counsel for appellant, Mr. Ryan. Mr. Ryan, are you there? Hello. Hello, Mr. Ryan? Yes, I'm ready. The issue in this case is very simple. Very simple. Should this court exercise its power to conduct an in-camera review of the Eastern District Prosecution Memorandum, which declined prosecution, in order to determine whether or not Mr. Ritigliano was the subject of a fraudulent representation by the Southern District Prosecutors as to what is required for a disability. If the review of the in-camera review shows that one of the factors that the Eastern District relied upon in declining prosecution was this lenient standard that submitted eligibility. If you had one impairment that prevented you from performing one task, then we suggest that portion of the memorandum should be exiled. The court could consider making it available to Mr. Ritigliano so that he can bring a motion before this court for authorization to go back to Judge Marrero in the district court and challenge his conviction about being convicted upon a false premise perpetrated by the Southern District Prosecutors. I'm sorry, counsel, but this is not Mr. Ritigliano's prosecution. This is a FOIA case. And so what you have to show us is that the Department of Justice withheld something to which you are entitled under the Freedom of Information Act. And so why would it be the case that if the U.S. Attorney's Office relied on this argument or that argument when it was deliberating over whether to bring charges, that would make a difference as to whether it was disclosable under FOIA? Doesn't FOIA just say that if a document is subject to a privilege, it can be withheld? The public's confidence in the criminal justice system depends upon the judges making sure that the system operates honestly and clearly. And that's the same objective as FOIA. The public has a right to have confidence that the criminal justice system is operated honestly. I'm sorry, a purpose of FOIA is to make sure that the public believes the criminal justice system is conducted honestly? Yes, that is correct. To have that public confidence in the criminal justice system. And in fact, the Administrative Office of the U.S. Courts has published in its U.S. Courts Manual that one of the reasons to preserve public trust is that the judiciary has to earn that trust by faithfully performing its duties. And effectively carrying out internal oversight and government responsibilities. And these responsibilities including accountability for a fay to observe scrupulous adherence to ethical standards. And what we're saying here is that the public and the judges have to know whether or not there was a fraud perpetrated to make this Southern District prosecution a viable one. Which this court, the Second Circuit, has upheld as being a valid conviction. When there seems to be substantial evidence by the Inspector General of the Railroad Retirement Board post-trial that this standard was so lenient that the agency grants 98% of these applications for which there would be no reason to commit fraud. And that was his entire defense in the case. That he was following the standard actually applied by the Railroad Retirement Board. And he's been unable to persuade this court on two separate appeals that he was in fact railroaded by this prosecution in the Southern District. So he made that argument in his defense. And you're suggesting that if under this FOIA case you can reveal that the U.S. Attorney's Office for the Eastern District of New York said something that was sympathetic to that defense, it would lead us to reconsider our decision upholding his conviction. Is that right? The only decision this panel has to make is whether or not under FOIA there is a provision in this memorandum which reflects on the integrity of the process. And Mr. Rettigliano has to decide whether or not that disclosure to him by this panel... Can I just ask you where in the Freedom of Information Act it says that whenever a document or a piece of information reflects on the integrity of the process, the government may not... There is a provision in the FOIA Act that, I'm sorry I can't give you the specific paragraph, but it's in there that says that nothing in these regulations shall prevent an unfair trial or an unjust conviction. I can't put my finger on it, but it's right in there. So the FOIA was intended not only to give public confidence, but it was also intended to prevent unjust convictions. So this Freedom of Information Act goes beyond simply saying that you have to bring it up on the first appeal or the second appeal. So that's why we brought this FOIA action, because we wanted to get to the truth of the matter. And the only way to do it is very unusual for a U.S. attorney in Brooklyn to decline a criminal prosecution that the Southern District decides to bring and resurrect. Without the Southern District asking the Eastern District, well, why did you decline the prosecution? They told Judge Marrero that we never knew the reason. We had all of the documents gathered by the Eastern District, and then we started our own investigation. So if that was a false statement to Judge Marrero and this circuit, then it requires that this panel consider making available to Mr. Rotigliano only that portion of the memorandum, which deals with the lenient standards actually applied by the railroad retirement board. Thank you. We'll wait for my rebuttal time. Thank you, counsel. We'll hear from the appellee, Mr. LaPari. Good morning, Your Honors. I'm Mr. LaPari. I'm an assistant U.S. attorney in the Eastern District of New York, and I represent the appellee, DOJ. Your Honor, FOIA requires that documents be produced unless they fall within an exemption. Here, a report and recommendation of Magistrate Judge Lindsey, which was affirmed by the late Judge Spatz, found that the document that Plaintiff seeks fell within Exemption 5, specifically the work product and deliberative process components of that exemption. Remarkably, upon this appeal, as upon all the briefing before the district court, Mr. Ryan, attorney for Mr. Rotigliano, never addressed the exemption. His entire argument is based on a presumption that has no support in law. And that presumption is that if a document may contain Brady material, sculptatory material, then FOIA doesn't apply anymore, and a court must release the document. There's absolutely no support for that position. We cited no cases to support that position. We cited cases to the contrary that say FOIA is not a substitute for criminal discovery. One of the bedrock principles of FOIA. We've said FOIA is not a substitute for criminal discovery. We've also said that even if something that would be protected by the work product doctrine would not be protected in a trial, like there was a reason why it would be admissible, it still is protected under FOIA because FOIA doesn't create individualized exceptions to the privileges. Isn't that right? Correct, Your Honor. There's no particular… So even if this document did contain Brady material or was somehow exculpatory, would FOIA allow you to release this? No, unless it fell within an exemption, and Mr. Ryan has yet to show that it falls within any exemption. Under FOIA, every member of the public has the same right to a document if it doesn't fall within an exemption. Particularized need is not a requirement, and it doesn't bolster the argument of one member of the public over the other. Mr. Ryan's whole argument is based on the contention that because his client was convicted and there's supposedly exculpatory material in this document, he has a heightened right to it, and that is simply not the case. The document clearly falls within Exemption 5. A memorandum which describes whether or not to prosecute is work product. It's done in contemplation of prospective litigation, and it factors into facts discovered during the grand jury process which preceded the report and the analysis that went into the determination. It's also protected by the deliberative process exemption because this document was written by an assistant U.S. attorney who conducted the investigation and made a recommendation to the U.S. attorney who alone can approve or disapprove a prosecution as to whether a criminal proceeding should go forward. Therefore, it's pre-decisional as required under the deliberative process privilege, and it's also deliberative because, once again, it's an analysis of facts and law to reach a recommendation upon which the U.S. attorney will make a decision. Mr. Ryan's contention also is that, regardless of FOIA, an in-camera inspection should be conducted to determine whether this document contains exculpatory material. That argument is putting the cart before the horse because we need an exemption before a district court can exercise its discretion to examine the document. Here, Mr. Ryan never argued an exemption, and the district court found that two exemptions, well, two bases for Exemption 5 clearly applied, the work product and the deliberative process exemption. The court had the discretion to ask for production of the document for in-camera review. Two judges declined to exercise that discretion, finding that, based on the submissions that DOJ made, the document was clearly protected. The submission was based on the declaration of attorney Tricia Francis with EOUSA, and the relevant facts underlying that declaration are not really in dispute. That is, it was a grand jury investigation. It was conducted by an assistant U.S. attorney. Based on the grand jury investigation, the assistant U.S. attorney wrote a memo to his supervisor, the U.S. attorney, in which he gave his conclusions and discussed the facts, and a recommendation was made. There are no disputes about any of those facts, and they're laid out in the Francis Declaration. Therefore, the court properly, two judges, properly declined to exercise their discretion to ask for an in-camera review. In sum, Your Honor, particularized need is no basis to make a FOIA request. Documents subject to FOIA are producible under FOIA if an exemption applies. Here, Mr. Ryan has yet to show an exemption applies. And unless Your Honors have any questions for me, I will rest on my brief. Thank you, counsel. Mr. Ryan, you have three minutes for rebuttal. Remarkable proposition that if there's exculpatory evidence in the Eastern District's memorandum, that that is not available to Mr. Rotigliano and to the public to know that he was railroaded by the Southern District of New York. And I haven't heard anything in the Francis Declaration in any way addresses whether or not the standard was at all considered by the Eastern District. Instead, the Francis Declaration talks about privacy of witnesses and evaluation of witnesses, none of which Mr. Rotigliano seeks. Mr. Ryan, do you dispute that the document was generated before the Eastern District decided whether to prosecute? It was the basis for the declination, yes. Right, so it was before the decision. And so, do you deny that it includes deliberations of the Eastern District in order to make that decision of attorneys within the Eastern District? I do not deny that. It's supposed to be, so in the U.S. Attorney Manual, they were to document the reasons for non-prosecution. This is the reason that under their own regulation. So then the deliberative process privilege would apply, right? So why would there be an exception? The exception is that it goes to the integrity of the entire process of the criminal prosecution. Because the Southern District claimed that they didn't know the reason the Eastern District declined, which is a very bizarre proposition, very bizarre. And that's why, that's why, for example, in other cases, such Judge Sotomayor, when she was sitting in a tied case, which is cited in our brief at 312 Fed Third, during the oral argument, asked the government to produce the document for their court's review, in order to make certain that they're making the right decision. And that's been done in other cases on a routine basis by judges who have to resolve this question. So that's why we urge this court to exercise this power, a power, by the way, that was granted by Congress over the veto of President General Ford, so that you can make a proper evaluation of the significance of this memorandum. It would take no more than 10 minutes. Can I ask, when you're saying during Mr. Rotigliano's prosecution, when the Southern District said that it didn't know the reasons for the Eastern District's declination, did you seek to obtain this memorandum then, or testimony from the Eastern District, or anything like that? Yes, and they convinced Judge Marrero to deny access or the reasons upon the grounds that it was relevant. So when the Southern District represented that they didn't know the reasons for the Eastern District, you sought to obtain this very document that you're now seeking to introduce it at the trial, and you were denied that decision by Judge Marrero. No, we couldn't. We were in the trial. It was denied as a matter of discovery in the pretrial. Judge Marrero ruled, and he continued to rule that way, that you had to be in a wheelchair throughout the entire trial. So there was no relief we could have gotten. Then we went to the Second Circuit. We appealed. We said this is wrong. Judge Jacob's opinion said, well, Mr. Ryan argued that in summation, but that's not the law, without knowing the background of the Eastern District's memorandum. Mr. Ryan, do you think it's fair to say that what you're doing here is using the Freedom of Information Act to get the document that you were denied during the criminal proceeding? Yes. We have no hesitancy in saying that. There were 33 defendants who pled guilty under this false proposition by the Southern District of New York. So it's not just merely a matter of Mr. Bertigliano's rights. It's the entire integrity of the process. We have no hesitancy in saying that. Correct. The integrity of the verdict and the honesty of the criminal justice system depends upon disclosures that this court can conduct in camera. I hear of no prejudice, no prejudice whatsoever, for the Department of Justice to have this court, this panel, take 10 minutes out to see whether or not that's a fact or not. If it's not a fact, Mr. Bertigliano is willing to dismiss the appeal. This is a waste of time. But given the post-trial disclosures, with the Inspector General going to Congress and pleading to change the law, to change the standards, to strengthen it, because 98% of these petitions are given, shows that there is a public concern. In fact, Senator and a Congressman has complained that this agency continues to give out millions of dollars in disability benefits under this lenient standard. We don't understand that. And they wanted the Railroad Retirement Board to account for it. And they did. Today, they still continue applying that lenient standard that Mr. Bertigliano's defense was entirely based upon. Today, they still do that. So that there is every reason to preserve the integrity of this system, not only to have it to Mr. Bertigliano's point of view, but for Congress' point of view, Senator's point of view, which we pointed out in our brief, to put at rest, at rest, the question of whether or not the Railroad Retirement Board is acting honestly under this lenient standard that has been established forever and continues to this day to give these disability pensions. That's what's at stake here. Thank you very much. And we have two judges who refuse to look at the Memorandum of the Eastern District. And I think the public has the right to say, at least the three judges on this panel took a look at it and see whether or not there's any basis for Mr. Bertigliano's complaint. And the public's concern about the integrity of the criminal justice system. Thank you very much. Okay. Thank you, counsel. We'll take the matter under advisement. The remaining cases for today, United States v. Wood and Lee v. Garland, are on submission. So that concludes today's argument. I'll ask the court and the deputy to adjourn. Court stands adjourned.